## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Parish of Livingston,<br><br>                                    Plaintiff,<br><br>            v.<br><br>Teva Pharmaceuticals Industries, Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan PLC f/k/a Actavis PLC; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt PLC; Mallinckrodt LLC; Insys Therapeutics, Inc.; McKesson Corporation; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; Morris and Dickson Co., LLC,<br><br>                                    Defendants. | Case No. _____<br>(Removal from: Twenty-First Judicial District Court for the Parish of Livingston, No. 164910-C) |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant McKesson Corporation ("McKesson") has removed the above-captioned action from the Twenty-First Judicial District Court for the Parish of Livingston, Louisiana, to the United States District Court for the Middle District of Louisiana. As grounds for removal, McKesson states:

I.    **NATURE OF REMOVED ACTION**

1.      On October 16, 2019, the Parish of Livingston, Louisiana ("Plaintiff") filed *Parish of Livingston v. Teva Pharmaceutical Industries Ltd., et al.* in the Twenty-First Judicial District for the Parish of Livingston.  The court assigned this action Case No. 164910-C.

2.      The Petition names two discrete groups of defendants.  Pet. ¶¶ 4-5.

3.      The first group of defendants consists of Teva Pharmaceuticals Industries Ltd. (incorrectly named "Teva Pharmaceuticals Industries, Ltd." in the Petition); Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt plc; Mallinckrodt LLC; and Insys Therapeutics, Inc. (collectively, "Manufacturer Defendants").

4.      The second group of defendants consists of McKesson; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; and Morris and Dickson Co., LLC (incorrectly named as Morris and Dickson Co., Inc. in  the Petition) (collectively, "Distributor Defendants").

5.      Plaintiff complains of the over-distribution of prescription opioids, alleging that "unlawful conduct by the Distributor Defendants is responsible for the volume of prescription opioids plaguing the Parish, City and Plaintiff's Community."  *Id.* ¶ 26.

6.      The Petition asserts eight causes of action against McKesson and the other Distributor Defendants: public nuisance (Count I); redhibition (Count III); false advertising (Count IV); misbranding drugs or devices (Count V); violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (Count VI); negligence and negligent misrepresentation

2

(Count VII); fraud and fraudulent misrepresentation (Count VIII); unjust enrichment (Count IX). *See id.* ¶¶ 278-324, 354-454.

7.    Additionally, Plaintiff brings a claim for violation of the Louisiana Products Liability Act (Count II) against only the Manufacturer Defendants. *Id.* ¶¶ 325-53.

8.    Although Plaintiff purports to disavow stating a federal question, *id.* ¶ 36, Plaintiff's claims against the Distributor Defendants stem from an alleged duty to "monitor, detect, investigate, refuse to fill and report excessive or unusual orders of prescription opioids," *id.* ¶ 5.  Plaintiff pleads that the Distributor Defendants breached those duties when they "failed to report excessive or unusual orders orders originating from the Parish," *id.* ¶ 171, and "unlawfully filled excessive or unusual orders in the Parish," *id.* ¶ 172.

9.    Because the duties governing reporting and shipping excessive, unusual, or otherwise "suspicious" opioid orders arise, if at all, only from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

10.    McKesson has not responded to the Petition, and McKesson's response is not due until December 23, 2019, pursuant to a stipulation between Plaintiff, McKesson, and other defendants.

11.    On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017).  McKesson intends to tag this case immediately for transfer to the MDL.

12. In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and a copy of all process, pleadings, and orders served upon McKesson in the state court action are attached as **Exhibit A**.

II.    **TIMELINESS OF REMOVAL**

13. Plaintiff served McKesson with the Petition on October 22, 2019.

14. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiff's Petition. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

15. "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."   28 U.S.C. § 1446(b)(2)(C).

III.    **PROPRIETY OF VENUE**

16. Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

IV.    **BASIS OF REMOVAL**

17. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

18. The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

19. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

20.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

21.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  "Where all four of these requirements are met . . . jurisdiction is

---

[1] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id*. at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development.  . . .  Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  565 U.S. 368, 379 (2012) (brackets, citations, and internal quotation marks omitted).

proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

22.    As set forth below, this case meets all four requirements.[2]

23.    Although Plaintiff ostensibly pleads some of its theories of recovery against McKesson as state law claims, it bases the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of excessive, unusual, or otherwise suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.

24.    The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* 21 C.F.R. § 1301.74(b) ("The registrant shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant").

25.    The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the DEA.  Specifically, the DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg.

---

[2] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

26.    Plaintiff's theories of liability against McKesson and other Distributor Defendants, as pled in the Petition, are predicated on allegations that McKesson and the Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report excessive or unusual pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to refuse to ship such orders to Louisiana pharmacies.

27.    Specifically, Plaintiff invokes federal law and pleads that McKesson and the other Distributor Defendants violated the CSA with, among others, the following allegations:

a.    "The Distributor Defendants owe a duty under Louisiana law[3] to monitor, detect, investigate, refuse to fill, and report excessive or unusual orders of prescription opioids originating from the Parish, the City and Plaintiff's Community as well as those orders which the Distributor Defendants knew or should have known were likely to be diverted into the Parish, City, and/or Plaintiff's Community." *Id.* ¶ 142.

b.    "Each Distributor Defendant repeatedly and purposefully breached its legal duties.  Such breaches are direct and proximate causes of the widespread diversion of prescription opioids for nonmedical purposes into the Parish and Plaintiff's Community**.**" *Id.* ¶ 144.

c.    "In addition to reporting [excessive or unusual] orders, distributors must also stop shipment on any order which is flagged as excessive or unusual and only ship orders which were flagged as potentially excessive or unusual if, after conducting due diligence, the distributor can determine that the order is not likely to be diverted into illegal channels.  Regardless, all flagged orders must be reported." *Id.* ¶ 156.

d.    "The Distributor Defendants have admitted that they are responsible for reporting suspicious orders." *Id.* ¶ 159.

---

[3] To support the alleged duties in this paragraph, Plaintiff cites in a footnote to 46 La. Admin. Code Pt. XCI, § 313 but that provision imposes nothing more than a duty to "review excessive or suspicious purchases."  Neither this provision, nor any other Louisiana statute or regulation, imposes a duty to report or stop shipment of excessive or unusual orders.  Accordingly, Plaintiff's passing references to "state law" and "Louisiana law" throughout the Petition should be disregarded as mere surplusage.

e.    "A distributor, in addition to reporting excessive or unusual orders, has a legal responsibility to exercise due diligence to avoid filling excessive or unusual orders that might be diverted into other than legitimate medical, scientific, and industrial channels." *Id.* ¶ 160.

f.    "[The Distributor Defendants] must conduct an independent analysis of excessive or unusual orders prior to completing a sale to determine whether the controlled substances are likely to be diverted from legitimate channels.  Reporting an order as excessive or unusual will not absolve the distributor of responsibility if it knew, or should have known, that the controlled substances were being diverted." *Id.* ¶ 161.

g.    "A distributor's investigation must dispel all the red flags giving rise to excessive or unusual circumstances prior to shipping an excessive or unusual order." *Id.* ¶ 162.

h.    "The Distributor Defendants knew they were required to monitor, detect, and stop excessive or unusual orders . . . If an order is excessive or unusual, the distributor should limit the shipment to the customer." *Id.* ¶ 164.

i.    "Each Distributor Defendant owes and has owed duties to monitor and detect excessive or unusual orders of prescription opioids; investigate and refuse excessive or unusual orders of prescription opioids; report excessive or unusual orders of prescription opioids; and prevent the diversion of prescription opioids into illicit markets in the State, the Parish, City, and Plaintiff's Community." *Id.* ¶ 166.

j.    "The Distributor Defendants unlawfully filled excessive or unusual orders in the Parish and Plaintiff's Community, and/or in areas from which the Distributor Defendants knew opioids were likely to be diverted in the Parish and Plaintiff's Community." *Id.* ¶ 172.

k.    "The Distributor Defendants supplied prescription opioids to suspect physicians and pharmacies, and enabled the illegal diversion of opioids, aided criminal activity, and disseminated massive quantities of prescription opioids into the black market." *Id.* ¶ 179.

l.    "The Distributor Defendants' repeated shipments of excessive or unusual orders, over an extended period of time, in violation of public safety statues, and without reporting the excessive or unusual orders to the relevant authorities demonstrates wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others." *Id.* ¶ 182.

m.    "Plaintiff recently discovered that at various times during the period from January 1, 2009 through January 17, 2017, McKesson did not identify or report certain orders placed by certain pharmacies which should have been

8

detected; McKesson distributed controlled substances to pharmacies even though those McKesson Distribution Centers should have known that the pharmacists practicing within those pharmacies had failed to fulfill their corresponding responsibility to ensure that controlled substances were dispensed pursuant to prescriptions issued for legitimate medical purposes by practitioners acting in the usual course of their professional practice; and McKesson failed to maintain effective controls against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain of its customers." *Id.* ¶ 184.

n. "The Distributor Defendants have continued to unlawfully ship these massive quantities of opioids into communities like the Parish, City, and Plaintiff's Community, fueling the epidemic." *Id.* ¶ 206.

28. Plaintiff cannot identify a state law source for a requirement that wholesale pharmaceutical distributors report excessive or unusual orders of controlled substances to a Louisiana government official or entity, nor can it identify any state law source for a requirement that wholesale pharmaceutical distributors "stop" or "halt" such orders from registered pharmacies.  Thus, Plaintiff's claims against Distributor Defendants, as Plaintiff pleads them, arise under federal law.

29. The Louisiana laws and regulations cited by Plaintiff require distributors to "adhere to written policies and procedures, which shall be followed for the receipt, security, storage, inventory, and distribution of drugs or devices, including policies and procedures for identifying, recording, and reporting losses or thefts" and to notify the state Board of Pharmacy after discovering "theft or diversion of a drug."  *See* Pet. ¶ 153 (citing 46 La. Admin. Code Pt. XCI § 313; La. Rev. Stat. Ann. § 40:974(A)(1), (A)(4).  These narrow provisions, which relate only to the reporting of diversion from distributors' inventory caused by *warehouse theft and internal pilferage*, are not analogous to the CSA's requirement that distributors report suspicious orders from third parties to government authorities.  Moreover, neither these provisions, nor any other in Louisiana, contain the alleged requirement to "stop" or "halt" excessive or unusual

orders of controlled substances to such third parties. That requirement is found only in the DEA's interpretation of implementing regulations of the CSA.

30.     Plaintiff's citations to Louisiana provisions that govern the licensing requirements for wholesale distributors are similarly inapposite. Pet. ¶¶ 150-52. Plaintiff does not allege that any Distributor Defendant operated with an invalid or revoked license. Rather, Plaintiff acknowledges that McKesson "at all relevant times, operated as a licensed distributer in Louisiana, licensed by both the Louisiana Board of Drug and Device Distributors and the Louisiana Board of Pharmacy." *Id.* ¶ 27. Plaintiff's references to Louisiana law, then, are nothing more than artful pleading, included in an effort to hide that Plaintiff cannot prevail on its claims, if at all, without relying on federal law.

31.     Furthermore, Plaintiff's theory of liability also relies on expansive reading of federal law that calls into question an agency determination. Plaintiff alleges not only that Distributor Defendants should have detected and reported discrete excessive or unusual orders by individual pharmacies, but that Distributor Defendants should have recognized that the *total volume* of prescription opioids distributed to various regions was excessive or unreasonable. *See, e.g.*, *id.* ¶ 170 (alleging that the "sheer volume of prescription opioids distributed to pharmacies in the Parish and Plaintiff's Community . . . is excessive or unusual for the medical need of the community and facially excessive or unusual" and that the suspicious nature of these orders is "so obvious that no one who engages in the legitimate distribution of controlled substances can reasonably claim ignorance of them"); *id.* ¶ 206 (alleging that Distributor Defendants unlawfully ship "massive quantities of opioids into communities like the Parish, State and Plaintiff's Community, fueling the epidemic").

32.     To succeed on that theory, Plaintiff would have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was unreasonable.  But the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by the DEA.  Specifically, the DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks."  21 C.F.R. § 1303.11(a).  In making this determination, the DEA must consider "[p]rojected demand" for such substances.  21 C.F.R. § 1303.11(b).  Thus, to show that the total quantity of prescription opioids that distributors distributed was unreasonable, Plaintiff would have to show that the annual aggregate production quotas set by the DEA, pursuant to a federal statute, were themselves unreasonable.[4]

33.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

34.     *First*, Plaintiff's state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law."  *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and citation omitted); *see also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power*

---

[4] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" of prescription opioids that they make.  In other words, it has been the case for years that each Distributor Defendant has reported to DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiff would have to show that Distributor Defendants' existing reporting to the DEA was inadequate under federal standards.

*Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (Alteration omitted.)); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." (Emphasis added.)).

35.     As pled, Plaintiff's claims against McKesson and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law.

36.     For example, Plaintiff's public nuisance claim depends on the allegation that Distributor Defendants "unlawfully and/or intentionally distributed opioids or caused opioids to be distributed without maintaining effective controls against diversion" by failing to "effectively monitor for excessive or unusual orders, report excessive or unusual orders, and/or stop shipment of excessive or unusual orders."  Pet. ¶ 290.  Because the lawful distribution of prescription drugs to registered pharmacies cannot qualify as a prohibited activity under Louisiana's public nuisance statutes, the viability of Plaintiff's claim turns on violations of the alleged reporting and shipping requirements, which are found only in the federal CSA and its implementing regulations.

37.     In sum, the Petition necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA.

38.     As noted, the Petition also raises a federal issue because it implicates the actions of a federal agency.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)

("The dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases."). Specifically, while Plaintiff alleges that the total volume of prescription opioids distributed by Distributor Defendants was unreasonable or excessive, that figure turns on production quotas set by the DEA. Plaintiff's theory of liability thus calls into question the validity of the DEA's determinations under federal law. *See Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme."); *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (concluding that complaint necessarily raises federal issue where "plaintiffs' claims are 'inescapably intertwined' with a collateral attack on an [agency] order").

39.     ***Second***, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

40.     ***Third***, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted). As the Supreme Court explained in

*Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

41.     Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation.  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control."  H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72; *see also* Pet. ¶ 157 (Prescription opioids "are regulated for the purpose of providing a closed system intended to reduce the widespread diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control.").

42.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d at 1024.  The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal

control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

43.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 316; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

44.     Removal is particularly appropriate here because Plaintiff's action is but one of thousands of similar actions nationwide, more than 2,300 of which are pending in the MDL in the Northern District of Ohio.  Indeed, opioid use and addiction is not merely a local issue, and

Plaintiff acknowledges that this is a "national epidemic." *See, e.g.*, Pet. ¶¶ 2, 42. The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[5]

45.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court interpreting or applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—interprets and applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

46.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012)

---

[5] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

47.    To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants and Distributor Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.    <u>OTHER REMOVAL ISSUES</u>

48.    Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

49.    The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below: Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Morris and Dickson Co., LLC; Noramco, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc; Teva Pharmaceuticals USA, Inc.; Watson Laboratories, Inc.; Cephalon, Inc.; Mallinckrodt LLC; and Actavis, LLC.

50.     The following Defendants maintain that they have not been properly served, and thus their consent to removal is not required: Insys Therapeutics, Inc.[6]; Mallinckrodt plc; Allergan plc f/k/a Actavis plc; and Teva Pharmaceutical Industries Ltd.[7]  Nevertheless, out of an abundance of caution, they consent to removal.  The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses, including but not limited to those regarding personal jurisdiction and service of process.

51.     By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to them, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

52.     If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

53.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

---

[6] On June 10, 2019, Insys Therapeutics, Inc. and its affiliates each filed a voluntary case under chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, which cases are being jointly administered under Case No. 19-11292 (KG). Also on June 10, 2019, Insys filed a motion for preliminary injunction seeking an order staying certain active cases in which Insys had already been served, to the extent not already stayed by the automatic stay.  On July 2, 2019 the Bankruptcy Court stayed all actions that were the subject of the preliminary injunction motion, except for actions in which certain plaintiffs resolved the motion with Insys prior to July 2, 2019.  Insys may seek to stay this action through the Bankruptcy Court absent the dismissal of this action or the entry of a stay in this action.  Insys also has not been served in this case. Nevertheless, to otherwise preserve and without waiving any of Insys's rights, and out of an abundance of caution, Insys consents to removal.

[7] Teva Pharmaceutical Industries Ltd., Mallinckrodt plc and Allergan plc are foreign companies and expressly reserve all defenses, including those related to personal jurisdiction and service of process.

54.   McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action from the Twenty-First Judicial District,

No. 164910-C, to this Court.


November 21, 2019                          BLANCHARD, WALKER, O'QUIN & ROBERTS
                                                (A Professional Law Corporation)

                                          By: */s/ Stacey D. Williams*_____
                                                   W. Michael Adams, Bar #2338
                                                    Scott R. Wolf, Bar #28277
                                                   Stacey D. Williams, Bar #22689

                                          Post Office Drawer 1126
                                          Shreveport, Louisiana 71163-1126
                                          Telephone: (318) 221-6858
                                          Telecopier: (318) 227-2967
                                          E-Mail:    madams@bwor.com
                                                     swolf@bwor.com
                                                     swilliams@bwor.com

                                          ATTORNEYS FOR DEFENDANT, MCKESSON
                                          CORPORATION

                                          **CONSENT OF OTHER DEFENDANTS:**

                                          Consent to removal on behalf of Defendant
                                          AMERISOURCEBERGEN DRUG
                                          CORPORATION:

                                          */s/ Richard M. Crump*_____
                                          Richard M. Crump (La. #30460)
                                          Robert E. Dille (La. #23037)
                                          Shelley K. Napolitano (La. #34692)
                                          MARON MARVEL BRADLEY ANDERSON
                                          & TARDY LLC
                                          Place St. Charles
                                          201 St. Charles Ave., Suite 2411
                                          New Orleans, Louisiana 70170
                                          Telephone: (504) 684-5100
                                          Facsimile: (504) 687-0067

Consent to removal on behalf of Defendant
CARDINAL HEALTH, INC.:

 /s/ *Franklin J. Foil*
Franklin J. Foil, (La. #20660)
412 N. Fourth St. Suite 240
Baton Rouge, LA 70802
(225) 382-3264
(225) 382-3268 Fax
ffoil@foillaw.com

Consent to removal on behalf of Defendant
NORAMCO, INC. (Louisiana counsel not yet
obtained)

Consent to removal on behalf of Defendants ENDO
HEALTH SOLUTIONS INC. and ENDO
PHARMACEUTICALS INC.:

/s/ *Kerry J. Miller*
Kerry J. Miller (#24562)
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170-4600
Telephone: (504) 556-5538
Facsimile: (504) 310-0275
kmiller@fishmanhaygood.com

Consent to removal on behalf of Defendants TEVA
PHARMACEUTICALS USA, INC.; WATSON
LABORATORIES, INC.; ACTAVIS PHARMA,
INC. F/K/A WATSON PHARMA, INC; ACTAVIS,
LLC; CEPHALON, INC.:

 /s/ *Richard S. Crisler*
Richard S. Crisler [#28007]
Michael C. Mims [#33991]
C. Wm. Bradley [#03371]
Natalie J. Taylor [#31282]
BRADLEY MURCHISON KELLY & SHEA LLC
1100 Poydras St., Ste. 2700
New Orleans, La 70163
Tel.: 504.596.6300
Fax: 504.596.6301
rcrisler@bradleyfirm.com
mmims@bradleyfirm.com

bbradley@bradleyfirm.com
ntaylor@bradleyfirm.com

Leland G. Horton [#26928]
BRADLEY MURCHISON KELLY & SHEA LLC
401 Edwards St., Ste. 1000
Shreveport, La 71101
Tel.: 318.227.1131
Fax: 318.227.1141
lhorton@bradleyfirm.com

Consent to removal on behalf of Defendants
JOHNSON & JOHNSON, JANSSEN
PHARMACEUTICALS, INC., ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC., and
JANSSEN PHARMACEUTICA, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC.:

/s/ *Kelly Juneau Rookard*
David W. O'Quinn (#18366)
Douglas J. Moore (#27706)
Kelly Juneau Rookard (#30573)
Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Tel: (504) 310-2100
Fax: (504) 310-2101
doquinn@irwinllc.com
dmoore@irwinllc.com
kjuneau@irwinllc.com

Shannon M. Jaeckel (#37738)
Irwin Fritchie Urquhart & Moore LLC
400 Convention Street, Suite 1001
Baton Rouge, Louisiana 70802
Tel: (225) 315-7150
Fax: (504) 310-2101
sjaeckel@irwinllc.com

Consent to removal on behalf of Defendant
INSYS THERAPEUTICS, INC.:

/s/ Bradley Hancock
L. Bradley Hancock (La. 27234)
Holland & Knight LLP

1100 Louisiana Street, Suite 4300
Houston, Texas 77002
Tel: (713) 821-7000
Fax: (713) 821-7001
brad.hancock@hklaw.com

Consent to removal on behalf of Defendant
MALLINCKRODT LLC:

/s/ *Harry Rosenberg*
Harry Rosenberg (La. Bar No. 11465)
PHELPS DUNBAR LLP
Canal Pl. / 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  504-566-1311
Facsimile:  504-568-9130
Email:  harry.rosenberg@phelps.com

/s/ *Gregory T. Stevens*
Gregory T. Stevens Bar Roll No.  29436
PHELPS DUNBAR LLP
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802-5618
P.O. Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: 225-346-0285
Facsimile: 225-381-9197
Email: greg.stevens@phelps.com

Consent to removal on behalf of Defendant
ALLERGAN FINANCE, LLC F/K/A ACTAVIS,
INC. F/K/A WATSON PHARMACEUTICALS,
INC.

/s/ T. MacDougall Womack
T. MacDougall Womack (La. Bar Roll # 13648)
Taylor, Porter, Brooks & Phillips LLP
450 Laurel Street, 8th Floor (70801)
Post Office Box 2471
Baton Rouge, Louisiana 70821
(225) 387-3221 Telephone
(225) 381-0239 Direct Dial
(225) 215-8734 Facsimile
MacDougall.Womack@taylorporter.com

Consent to removal on behalf of Defendant MORRIS
AND DICKSON CO., L.L.C.:

/s/ Frank H. Spruiell, Jr.
Frank H. Spruiell, Jr. (#01611)
Russell Dickson (#37660)
WIENER, WEISS & MADISON, APC
330 Marshall St., Ste. 1000
Shreveport, Louisiana 71101
Telephone: 318.213.9281
fspruiell@wwmlaw.com
rdickson@wwmlaw.com